J. W. SAMUEL, INC., Respondent, *v.* JOHN J. HAMS, Appellant.

First Department, May 16, 1919.

Contract — action by corporation maintaining institution for physical development to recover upon signed application for treatment — physical inability of applicant to receive treatment — want of consideration — practice of medicine without license in violation of Public Health Law.

Where plaintiff, incorporated " to establish, maintain and operate an institution in which persons may obtain accommodation for rest, physical exercise, bathing, massage and hygienic treatment," advertised to treat by physical exercises, etc., diseases and physical conditions of patients, although neither its president nor any employee was a duly licensed physician, and the defendant, who had signed an application for membership in the plaintiff and agreed to pay a certain sum for treatment, discovered that after the acceptance of his application and the receipt of a trial treatment he was physically unable to receive other treatments, a judgment in favor of the plaintiff should be reversed upon the ground of want of consideration, and the complaint dismissed.

The plaintiff was not engaged in the practice of medicine within the definition and purport of the Public Health Law. (Per CLARKE, P. J., and LAUGHLIN and PAGE, JJ.)

APPEAL by the defendant, John J. Hams, from a determination of the Appellate Term of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 2d day of January, 1919, affirming a judgment of the Municipal Court of the City of New York, Borough of Manhattan, First District.

*Winifred Sullivan*, for the appellant.

*Max L. Arnstein*, for the respondent.

MERRELL, J.:

The plaintiff recovered judgment in the Municipal Court of the Borough of Manhattan, First District, against defendant for $300 damages and $28 costs. The defendant appealed from said judgment to the Appellate Term, where the judgment of the Municipal Court was affirmed. By permission of this court the defendant has appealed from such determination of the Appellate Term and asks that the judgment of the Municipal Court and the affirmance thereof by the Appellate Term be reversed.

The plaintiff is a domestic business corporation organized and created, as stated in its certificate of incorporation, " to establish, maintain and operate an institution in which persons may obtain accommodation for rest, physical exercise, bathing, massage and hygienic treatment." The evidence discloses that in the month of March, 1918, the officials of the plaintiff, learning of the ill health of the defendant, mailed to him a book describing the advantages of the treatment furnished by the plaintiff at its so-called institution, which was situated at No. 42 Broadway, in the city of New York, and shortly thereafter defendant was waited upon by one Sussman, a solicitor and agent of the plaintiff corporation, who sought to interest the defendant in the treatment furnished by the plaintiff to persons seeking relief from bodily infirmities. Sussman induced the defendant to call at plaintiff's place of

business on March 26, 1918.   The originator of the treatment given at the plaintiff's institution, Mr. J. W. Samuel, was absent when defendant called, but Sussman received and introduced defendant to one Rheinish, whom he claims was introduced to him as " Doctor " Rheinish.   Some discussion was had between Rheinish, who was president of the plaintiff corporation, and defendant relative to the treatment given patients.   Defendant was induced to look over the plaintiff's quarters, and finally to remove his clothing.   After the " Doctor " had examined defendant's heart and lungs by listening to them, he was arrayed in a rubber coat and given certain calisthenic exercises which Rheinish informed him were characteristic of the treatment which he would receive if he entered into a contract with the plaintiff.   Defendant, among other things, was put through a course of setting-up exercises, as they were called.   The medicine ball was tossed and, lying prone upon the floor upon his back, defendant was required to work his neck off the floor.   After this treatment was completed and defendant given a rub-down with alcohol, he signed a so-called application in the following terms:

" J. W. SAMUEL, INC.,
      " 42 Broadway, City:

" I hereby apply for membership in the J. W. Samuel, Inc., institution, to include three half hours per week for 22 consecutive weeks, and I agree to pay you the sum of $300 upon your acceptance of this offer.

" It is understood that upon the expiration of said period of 22 weeks, I have the privilege of continuing the same for one year thereafter upon payment of the further sum of $300.

" Reserve the half-hour from 5 P. M. to 5.30 P. M. on Monday, Wed'day and Friday of each week, commencing on March 26th, 1918.

" NEW YORK, March 26th, 1918.          J. J. HAMS."

At the foot of such written and signed application an acceptance was written, signed by the corporate name of the plaintiff by William H. Rheinish, its president, and the same was left with the plaintiff corporation.

The day following the signing and acceptance of said

application defendant was sore and lame and a serious trouble developed with his neck, which he attributed to such trial treatment which he received at plaintiff's institution.   Defendant at once notified the plaintiff that he would be unable to continue or to accept the course of treatment mentioned in the application which he had signed.   Defendant testifies that his condition became so serious that it became necessary to call a physician, who, for several days, treated him for his condition and the serious trouble with his neck.   The defendant testified that at the time of the trial he had not recovered and was then under treatment for said difficulty. The proofs show that the defendant was physically unable to receive the treatment for which he had applied and for which he had agreed to pay the said sum of $300.   He never, in fact, visited the plaintiff's institution after the day when he received the trial treatment from which he says he never recovered.   Defendant's physical condition and inability to take the treatment for which he had applied were not controverted by the plaintiff upon the trial.   Plaintiff demanded payment of the moneys named in the application, with which demand defendant refused to comply, and in May, 1918, the plaintiff brought action to recover the $300 which it alleges defendant had agreed to pay for the twenty-two weeks' course of treatment in plaintiff's institution, and a recovery therefor was had in Municipal Court, which has been affirmed by the Appellate Term, as before stated.

The defendant, appellant, contends that the contract was one involving the rendition by plaintiff to defendant of personal services, and that there was an entire failure of consideration by reason of the fact that the plaintiff never furnished the defendant with the treatment mentioned in the application.   While it is true that the failure to furnish such treatment was owing to the fact of defendant's physical inability to receive the same, yet it seems to me that the defendant's position in this respect is correct.   The only consideration for the payment of the $300 was the furnishing of the accommodation and treatment which defendant was physically unable to receive.   No question is raised as to the physical inability of the defendant to withstand the treatment furnished by the plaintiff.

The Supreme Court of Massachusetts, in *Stewart* v. *Loring* (5 Allen, 306), has held that where a person agreed to pay a certain sum for tuition in a gymnasium for a year, but was prevented by illness from attending, that although the plaintiff kept the gymnasium open and was at all times during the year ready to furnish the defendant with the use thereof as contracted for, nevertheless that the plaintiff could not recover because there was no consideration for the promise to pay the tuition other than the receiving of the instruction contemplated; that the contracting parties must have assumed the ability of the gymnasium to furnish and of the party agreeing to pay to receive the instruction for which he had contracted. In the case at bar the defendant agreed to pay $300 upon the consideration that he receive the treatment and instruction contemplated in the written application which he made. The furnishing of such treatment and instruction was the only consideration for defendant's promise to pay. At the time defendant made the application he was in no position to know that he would be physically unable to take the treatment. When he found out that he was too weak to receive such treatment he promptly notified the plaintiff that he would be unable to fulfill his contract. Under such circumstances, the defendant was relieved from liability to pay the plaintiff the contract price.

Moreover, I think a complete answer to plaintiff's claimed right of recovery against the defendant lies in the fact that, under the statute and under the decisions of our courts, the plaintiff was, at the time, engaged in the practice of medicine without a license, in violation of subdivision 7 of section 160 of the Public Health Law (Consol. Laws, chap. 45; Laws of 1909, chap. 49). That statute defines the practice of medicine as follows: "A person practices medicine within the meaning of this article, except as hereinafter stated, who holds himself out as being able to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition, and who *shall either offer or undertake, by any means or method, to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition.*"

And by section 174 of the same law, any person not lawfully authorized to practice medicine within this State, and

First Department, May, 1919.                    [Vol. 187.

registered according to law, who shall practice medicine shall be guilty of a misdemeanor.

The respondent held itself out as maintaining an institution whereby by a scientific system devised by Mr. J. W. Samuel it would restore to health and put in good physical condition patients seeking treatment there. According to the testimony of Rheinish, the nature of the service rendered consisted of graduated exercises for the improvement of the physical condition, that is, the building up of the muscles and the strengthening of the tissues, and that the institution was for the purpose of putting businessmen in good condition physically. In plaintiff's advertising booklet a copy of which was mailed to the defendant, plaintiff advertised that what it had to offer was based on getting back to the days of boyhood, "staying the hand of time." As was stated in this advertisement: "We take you as you are, and by gradual evolutionary steps, make it possible for you to again take the same exhilarating joy in living that you did when you were a boy."

In this booklet the plaintiff represented that it would restore health, build up the body and put one in such good normal physical condition that it would not be again necessary to overcome the inertia of physical inactivity, and it was therein stated that "You can regain the health of youth, prevent a breakdown, and conserve a sound body by spending only half an hour three times a week at the J. Warren Samuel Institute."

It was also stated in said advertisement that the patient would be in better physical and mental condition after taking the simple forms of exercise prescribed than he would be in after he had returned from a health resort or from an extended so-called "rest." The plaintiff represented that it would furnish "individual systematic health and body building, under competent scientific supervision and instruction, will not only 'put you right' physically, but will also kill the germs of worry, nervousness and fear which nag at every businessman, because a man in good health is strong enough to grapple successfully with all problems that arise." And it was further stated:

"The system which has been gradually evolved provides

for individual and personal instruction and supervision for each patron. It ignores heavyweight juggling and disdains a bulging muscular development. Primarily it aims to rid the blood of its poisonous matters, to make constipation an impossibility, to raise vitality to par, to make insomnia a matter of fiction, deep breathing a habit and a normal body a standard condition.

" Our methods are adapted to your individual needs. We take you as you are, on the basis of your own inventory of yourself, and by easy, natural forms of exercise, correct your breathing, stimulate the circulation of your blood, harden your muscles, reduce or put on flesh and build up your body to what nature meant it to be and to what you want it to be."

It seems to me that clearly, under such advertisement and the admissions of the plaintiff's president upon the trial, the plaintiff was engaged in the practice of medicine within the meaning of the Public Health Law. Neither plaintiff's president nor any employee of the plaintiff was a duly licensed physician, and in conducting the institution the plaintiff clearly undertook, by means of the method which it had adopted, to treat diseases and physical conditions from which human beings were suffering. If this be true, then the contract whereby the plaintiff was to furnish the defendant treatment was void and there can be no recovery thereon. (*People* v. *Woodbury Dermatological Institute*, 124 App. Div. 877; *People* v. *Cole*, 219 N. Y. 98; *Matter of Bandel* v. *Department of Health*, 193 id. 133.) In *People* v. *Mulford* (140 App. Div. 716), which affirmed the conviction of the defendant of a misdemeanor for practicing medicine without a license, the defendant had an office where he received patients and treated them for physical ailments and received compensation therefor. He gave no medicine and prescribed none, nor did he perform any surgical operations and used no surgical instruments. His entire treatment consisted of laying on of hands and manipulation, breathing and rubbing his hands together. His treatment was beneficial to his patients. He had no license to practice medicine, and it was held that under such circumstances the defendant was guilty of the misdemeanor charged.

In the case at bar the plaintiff's officials disclaimed that they were doctors or were treating patients professionally,

but it was admitted that the treatment which they gave was with a view of improving the health conditions of those treated, and their certificate of incorporation stated that one of the purposes and objects for which the plaintiff corporation was formed was " to establish, maintain and operate an institution in which persons may obtain accommodation for rest, physical exercise, bathing, massage and hygienic treatment." The professed treatment did not include the administration of drugs or medicines, but it involved a means and method whereby they advertised to treat diseases and physical ailments and conditions, and in so doing they were, under the provisions of the statute, clearly engaged in the practice of medicine, and having no license therefor, those engaged in such practice were guilty of a misdemeanor and incapable of entering into a valid and enforcible contract for the treatment of patients.

Upon sound legal principles one may not recover upon a contract which is unlawful, either because it is contrary to good morals or because expressly forbidden by statute. Plaintiff and its officers, in engaging in the practice of medicine without being lawfully authorized and registered according to law, were not only doing a forbidden act, but were committing a crime under the statute. Such conduct precludes any recovery. (*Sprague* v. *Webb*, 168 App. Div. 292; affd., 225 N. Y. 685; *Johnston* v. *Dahlgren*, 166 id. 354.)

Upon the ground of want of consideration for the agreement upon which plaintiff seeks to recover, and upon the further ground that the contract was unenforcible as in violation of the provisions of the Public Health Law, I think the plaintiff was erroneously permitted to recover in the Municipal Court, and that the judgment recovered and entered there and the affirmance thereof by the Appellate Term should be reversed and the complaint dismissed, with costs to the appellant in all courts.

DOWLING, J., concurred.

CLARKE, P. J.:

I concur upon the first ground stated by Mr. Justice MERRELL, but dissent from the second ground because in

my opinion the respondent was not engaged in the practice of medicine within the definition and purport of the statute.

LAUGHLIN and PAGE, JJ., concurred.

Determination and judgment reversed and judgment directed to be entered in favor of defendant dismissing the complaint, with costs to appellant in all courts.