CHELTEN TRUST COMPANY, Respondent, *v.* NATIONAL AUTOMATIC PRESS COMPANY and Another, Defendants, Impleaded with ARTHUR B. JENNINGS and Another, Appellants.

Second Department, April 9, 1926.

Corporations — powers — power of foreign trust company to act as trustee under mortgage executed by individual as collateral security for bonds issued by another foreign corporation — if trust company was precluded from acting as trustee mortgage is void — Banking Law of 1909, § 186 (Banking Law of 1914, § 185), does not prohibit foreign trust company from acting as trustee under mortgage executed by individual — mortgage was given to secure entire issue of bonds.

The owner of premises who executed a mortgage to a foreign trust company for the purpose of securing bonds issued by another foreign corporation may successfully defend an action in foreclosure brought by the trustee if the foreign trust company is precluded from acting as trustee under such a mortgage, for in that case the act of the foreign corporation would be *malum prohibitum* and the mortgage would be void.

However, subdivisions 4 and 11 of section 186 of the Banking Law of 1909 (Banking Law of 1914, § 185) do not prohibit a foreign trust company from acting as trustee under a mortgage given by an individual to secure bonds of another foreign corporation, but apply merely in cases where the foreign trust company is acting as trustee under a mortgage given by a municipality, body politic or corporation to secure bonds, and since subdivision 4 does not apply to a mort-

gage given by an individual, subdivision 11 of said section does not prohibit a foreign trust company from acting in that capacity. Subdivisions 8 and 11 of said section do not prohibit a foreign trust company from becoming a trustee under a trust mortgage but prohibit such a company merely from taking or accepting any trusts and powers committed to it by grant, assignment, transfer, devise, bequest or otherwise.

The contention by the mortgagor that the mortgage was not made to secure the whole issue of bonds, but only to secure certain subscribers who would pay their subscriptions prior to the formation of the corporation which was then in process of formation, cannot be sustained in view of the written documents in evidence.

APPEAL by the defendants, Arthur B. Jennings and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Queens on the 12th day of June, 1925, upon the decision of the court rendered after a trial at the Queens Special Term.

The judgment directs the sale of certain premises in an action to foreclose a mortgage held by plaintiff as trustee for the bondholders of the National Automatic Press Company.

*James A. Sheehan [George B. Ackerly* with him on the brief], for the appellants.

*John Hill Morgan [Alfred J. L'Heureux* with him on the brief], for the respondent.

YOUNG, J. The plaintiff is a trust company, organized and existing under the laws of the State of Pennsylvania. The National Automatic Press Company is also a corporation organized and existing under the laws of the State of Pennsylvania. On July 16, 1913, the appellants, Arthur B. Jennings and Caroline A. Jennings, were the owners in fee of the premises described in the complaint.

On July 16, 1913, the appellants, Arthur B. Jennings and Caroline A. Jennings, his wife, executed the instrument, Schedule B of the complaint, which is in the form of a deed, in which plaintiff is named as grantee, of the premises described in the complaint. Such deed was acknowledged in the State, county and city of New York on July 16, 1913, and was recorded in the office of the clerk of Queens county on August 7, 1913.

At the time of the execution, delivery and recording of the deed the defendant corporation was not in existence. On August 9, 1913, the plaintiff executed and delivered to the appellants, Arthur B. Jennings and Caroline A. Jennings, the instrument, Schedule C of the complaint, which instrument recites that a statement for the formation of the defendant corporation, National Automatic Press Company, had been filed with the Secretary of the Commonwealth for the State of Pennsylvania and a charter

Second Department, April, 1926.                    [Vol. 216

was about to be issued thereon, and that the said corporation when formed was to take title to certain land in the city of Lehighton, Penn., and to build thereon a factory and shop subject to a certain trust mortgage in the sum of $100,000 to be given by said corporation to secure an authorized issue of bonds in that amount.

The said instrument, Schedule C, further provided that the said bonds were to be further secured by the execution and delivery by the defendant Arthur B. Jennings of certain real estate in said Schedule C described, which real estate is the same described in paragraph " eighth " of the complaint and in the judgment. Said instrument, Schedule C of the complaint, further recited that subscriptions had been made for the bonds, " conditioned upon the issuing of the same, and it is desired to receive and secure such subscriptions as may be paid in prior to the completion of the the said corporation and the issuing of the said bonds."

In the said instrument, Schedule C of the complaint, the plaintiff acknowledged that it had received from the appellant Arthur B. Jennings a deed made and executed by him on July 16, 1913, and intended to be forthwith recorded, of the premises described in the complaint.

The said instrument, Schedule C of the complaint, further contains the recital that the plaintiff acknowledges and declares that, while the said deeds to it are absolute in form, it holds the same in trust " To secure unto any and all subscribers to the said bonds of the National Automatic Press Company who may pay their said subscriptions to it, the said Chelten Trust Company, prior to the formation of the said Company and the issue of its said bonds, re-payment of the subscriptions so paid; should the said bonds not be issued on or before the First day of January, 1914, and upon the issue of the said bonds then to continue to hold the said real estate upon the ·following uses and trusts:" to convey to purchasers of said lots upon request of appellant Arthur B. Jennings, upon receipt in cash of three-fourths of the purchase price for which said lots shall be sold and to hold for securing payment of the said bonds all of said lots as shall not be sold; and to hold the purchase money received from the sales until payment. shall be made of the bonds.  The said instrument, Schedule C of the complaint, further provided that upon default in payment of the principal and interest of the said bonds as they became due or in the payment of taxes against the said premises the plaintiff had the right to sell the premises at public or private sale and to deliver deeds thereof freed of any and all trusts in said instrument created and to divide the proceeds among the holders of the bonds and any surplus to be paid over to the said Arthur B. Jennings.

The said declaration of trust contained provisions for the payment of the moneys received for said bonds.

The defendant, National Automatic Press Company, failed to pay its said bonds.

Suit was brought in the State of Pennsylvania under the deed of trust executed to it by the National Automatic Press Company, and after deducting the proceeds of sale in such action a deficiency of $111,514.11 remained.

Plaintiff then turned to its collateral security and began the present action.

The decision made by the trial justice includes findings covering the facts as above set forth and the following conclusions of law:

" I. That the plaintiff, a foreign corporation, was entitled to hold real property within the State of New York, in accordance with the provisions of section 10 of the Real Property Law, or to foreclose a mortgage thereon.

" II. That the deed, plaintiff's Exhibit 2, Jennings and wife to the plaintiff, as found in Finding VI hereof, was given as collateral security for the payment of the bonds issued under the mortgage, plaintiff's Exhibit 1, by the National Automatic Press Company, a Pennsylvania corporation, to the plaintiff, a Pennsylvania corporation, recorded in Pennsylvania and was intended to be and was a part of a Pennsylvania transaction.

" III. That the acceptance of the deed, plaintiff's Exhibit II, in Pennsylvania, of property in Queens County, State of New York, and the execution and delivery in Pennsylvania of the agreement, plaintiff's Exhibit III, by plaintiff to the defendant, Arthur B. Jennings, as to the disposition of the sale price of the lands in Queens County, State of New York, deeded by defendants, Arthur B. Jennings and his wife to the plaintiff, was not the acceptance of a trust prohibited by Section 223 of the Banking Law* as an encroachment upon the powers of local trust companies.

" IV. That plaintiff was required to file said agreement dated August 9, 1913, plaintiff's Exhibit 3, in the State of New York by reason of Section 320 of the Real Property Law and not otherwise.

" V. That said deed, plaintiff's Exhibit 2, is declared to be a mortgage within the State of New York by reason of the provisions of Section 320 of the Real Property Law and not otherwise.

" VI. That defendants, Arthur B. Jennings and Caroline A. Jennings, are estopped and precluded from raising as a defense the prohibitions of the Banking Law against foreign trust companies.

---

* See Banking Law of 1909, § 186, subd. 11, as amd. by Laws of 1913, chap. 317; Banking Law of 1914, § 223, as amd. by Laws of 1923, chap. 23.— [REP.

" VII. That it is unnecessary to appoint a substitute trustee to carry out the terms of the agreement, finding VIII hereof.

" VIII. That plaintiff is entitled to foreclose the deed, finding VI hereof, as a mortgage under the usual provisions covering such a proceeding and distribute the proceeds of sale in accordance with the agreement, plaintiff's Exhibit III, finding VIII hereof."

The main point presented by the appeal is that the plaintiff was prohibited by statute from acting as trustee under the mortgage in question, and that said mortgage is void in the State of New York on account of such statutory prohibition and cannot be enforced. It is apparent that this defense is an unconscionable one, for Jennings gave the mortgage in question for the very purpose of inducing subscriptions for the bonds and to secure the bondholders. He was financially interested in the corporation and became its secretary. Nevertheless if, in fact, this plaintiff, the Chelten Trust Company, was at the time it took the mortgage expressly forbidden to take it, then it was void and the courts in this State will not enforce it. A leading case on this subject is *Bath Gas Light Co.* v. *Claffy* (151 N. Y. 24). The legal question is there discussed as follows: " The modern and reasonable doctrine that contracts into which corporations may lawfully enter are such only as are expressly or impliedly authorized by their charters, is nevertheless frequently disregarded in practice, and when this is done and a corporation enters into a contract beyond its chartered powers, the question arises which has been the subject of debate and of much difference of opinion, how shall such a contract be treated by the courts, and whether the contract can create any rights as between the parties which the courts will enforce. There are some propositions pertaining to the general subject which are beyond dispute. One is, that a contract by a corporation to do an immoral thing, or for any immoral purpose, or, to use a convenient expression, a contract *malum in se*, is void and gives no right of action. The doctrine, however, is not peculiar to contracts of corporations. It has its root in the universal principle that persons shall not stipulate for iniquity. Another principle of general recognition is that a corporation cannot enter into or bind itself by a contract which is expressly prohibited by its charter or by statute, and in the application of this principle it is immaterial that the contract, except for the prohibition, would be lawful. No one is permitted to justify an act which the Legislature within its constitutional power has declared shall not be performed. The series of cases in this State, known as the Utica insurance cases, afford an apt illustration. It was held that the restraining acts which prohibited the exercise of banking

powers, including the discount of paper, by other than banking corporations, rendered void securities taken on such discount by corporations not possessing banking powers, and this, although the object of the restraining laws seems to have been the protection of the chartered banks in the monopoly of banking." (P. 30.)

And again (at p. 35) it is said: " If a lease by a corporation, made in excess of its powers and without legislative sanction, is illegal in the ordinary and proper sense of the term, it may be properly conceded that no action could be maintained upon it. The lessee, when sued for the rent, could set up the illegality of the contract, and the defense would prevail, however inequitable the defense might be. But the term ' illegal,' which is frequently used to describe a contract made by a corporation in excess of its corporate powers, in most cases means simply that the contract is unauthorized, or one which the corporation had no legal capacity to make. Such a contract may be illegal in the true and proper sense, but it may also be one involving no moral turpitude and offending against no express statute. The inexact and misleading use of the word ' illegal,' as applied to contracts of corporations, *ultra vires* only, has been frequently alluded to. (COMSTOCK, C. J., *Bissell* v. *M. S. Railroad Co.*, 22 N. Y. 268; ARCHIBALD, J., *Riche* v. *Ashbury Railway Carriage Co.*, L. R. [9 Exch.] 293; Lord CAIRNS, *S. C.* on appeal [*sub nom. Ashbury Railway Carriage & Iron Co.* v. *Riche*], L. R. [7 Eng. & Ir. App.] 672.) "

It seems clear from this that an act that is *malum prohibitum,* that which is expressly prohibited by law, is void and that no action can be maintained upon it.

In *Pratt* y. *Short* (79 N. Y. 437, 445) the court said: " It is no doubt the general rule of law, that no right of action can spring out of an illegal contract. And the rule that an illegal contract cannot be enforced, applies as well to contracts *malum prohibitum,* as to contracts *malum in se.*"

And at page 447 it was said as follows: " The effect of the restraining act upon contracts made in violation of its provisions, was considered in a series of cases, known as the Utica insurance cases, commencing with the case of *Utica Insurance Co.* v. *Scott* [19 Johns. 1]. In these cases the company had, in violation of the restraining act, carried on the business of discounting paper, exercising in respect thereto ordinary banking power. And it was held that the securities taken on such discounts were void, but that the money loaned could be recovered."

In *Crocker* v. *Whitney* (71 N. Y. 161, 170) the court said: " It is a settled principle, that the courts will not enforce a contract,

the subject-matter of which is either *malum prohibitum* or *malum in se.* A contract made in violation of a statute is void, and it is immaterial that it is not so declared in the statute itself. The law adjudges it to be so, and courts do not undertake to pass upon the wisdom of the policy of the Legislature in enacting prohibitory statutes."

I conclude, therefore, that, if the plaintiff trust company was prohibited by the statutes of this State from acting as trustee under the mortgage in question, the mortgage here was void and cannot be enforced, and that the defense interposed by appellants must be upheld. The question then comes as to the effect of our statutes prohibiting foreign corporations from acting as trustee under a mortgage, as was done in the present case, for I think there can be no doubt that the plaintiff did act as trustee under the mortgage in question for the benefit of bondholders, and that in the acceptance of the mortgage, although it was delivered in Pennsylvania, and in the attempted enforcement of it, plaintiff is acting as trustee under it in this State.

In the year 1913 a trust company organized under the laws of New York (Banking Law, art. 5) possessed the following rights conferred upon it by the following subdivisions of section 186 of the Banking Law (Laws of 1909, chap. 10), re-enacted, with partly changed phraseology, in section 185 of the present Banking Law (Laws of 1914, chap. 369):

" 3. To lease, hold, purchase and convey any and all real property necessary in the transaction of its business, or which the purposes of the corporation may require, or which it shall acquire in satisfaction or partial satisfaction of debts due the corporation under sales, judgments or mortgages, or in settlement or partial settlement of debts due the corporation by any of its debtors.

" 4. To act as trustee under any mortgage or bonds issued by any municipality, body politic or corporation, and accept and execute any other municipal or corporate trust not inconsistent with the laws of this State."

" 7. To take, accept and execute any and all such legal trusts, duties and powers in regard to the holding, management and disposition of any estate, real or personal, and the rents and profits thereof, or the sale thereof, as may be granted or confided to it by any court of record, or by any person, corporation, municipality or other authority; and it shall be accountable to all parties in interest for the faithful discharge of every such trust, duty or power which it may so accept.

" 8. To take, accept and execute any and all such trusts and powers of whatever nature or description as may be conferred

upon or intrusted or committed to it by any person or persons, or any body politic, corporation or other authority, by grant, assignment, transfer, devise, bequest or otherwise, or which may be intrusted or committed or transferred to it or vested in it by order of any court of record, or any surrogate, and to receive and take and hold any property or estate, real or personal, which may be the subject of any such trust."

In subdivision 11 of section 186 of the Banking Law (as amd. by Laws of 1913, chap. 317), which was existent when the mortgage in question was made and the trusteeship accepted in the year 1913, is the following provision: " No foreign corporation shall have or exercise in this State the power to receive deposits of trust moneys, securities and other personal property from any person or corporation or any of the powers specified in subdivisions one, four, five, six, seven, eight, ten and eleven of this section, nor have or maintain an office in this State for the transaction of, or transact directly or indirectly, any such or similar business." This prohibition has in substance been transferred with changed phraseology to section 223 of the present Banking Law (as amd. by Laws of 1923, chap. 23).

It will be noted that in this subdivision 11 of former section 186 there is not found any prohibition against the exercise of any of the powers specified in subdivision 3 of section 186, apparently for the reason that such limitation is effected by provisions in sections 20 and 21 of the General Corporation Law (Laws of 1909, chap. 28), which read as follows:

" § 20. Acquisition of real property in this State by certain foreign corporations. Any foreign corporation doing business in this State and created under the laws of the United States, or of any State or Territory thereof, or of any foreign State or nation which borders the United States of America and which by its laws confers similar privileges on corporations created by the laws of the State of New York, may acquire and hold such real property in this State as may be necessary for its corporate purposes in the transaction of its business in this State, and convey the same by deed or otherwise in the same manner as a domestic corporation." (Amd. by Laws of 1910, chap. 68.)

" § 21. Acquisition by foreign corporation of real property in this State. Any foreign corporation may purchase at a sale upon the foreclosure of any mortgage held by it, or, upon any judgment or decree for debts due it, or, upon any settlement to secure such debts, any real property within this State covered by or subject to such mortgage, judgment, decree or settlement, and may take by devise any real property situated within this State and hold

the same for not exceeding five years from the date of such purchase, or from the time when the right to the possession thereof vests in such devisee, and convey it by deed or otherwise in the same manner as a domestic corporation."

It will be noted that section 20 of the General Corporation Law has application only to foreign corporations doing business within the State, which the plaintiff was not, but it will also be noted that section 21 is not so limited.

The appellants claim that the exercise of the powers of a trustee by the plaintiff under the declaration of trust comes within the prohibition of subdivisions 4, 7 and 8 of section 185, former section 186. It will be noticed first that subdivision 4, referred to, does not in terms prohibit a foreign corporation from acting as trustee under a mortgage given by an individual. It only prohibits a foreign corporation from acting as trustee under a mortgage given by a municipality, body politic or corporation. And again, it will be noticed that while section 20 of the General Corporation Law, above quoted, refers to foreign corporations doing business in this State, which excludes the plaintiff, section 21 is not so limited, but provides that any foreign corporation may purchase at a sale upon the foreclosure of any mortgage held by it any real property within this State covered by or subject to such mortgage. This may, of course, refer to any mortgage legally held by any foreign corporation, but it is rather curious that section 20 specifically refers to a foreign corporation legally doing business in this State, and that section 21 is not so limited. It would seem to follow that, if section 21 gives any foreign corporation the right to purchase at a sale upon the foreclosure of any mortgage held by it any real property within this State covered by the mortgage, then, by implication, such corporation would have the right to foreclose that mortgage, for otherwise there could be no sale. I incline to the opinion, however, that section 21 refers to a mortgage legally held by any foreign corporation.

There is another view I think which may be taken with reference to these statutes. I have already pointed out that subdivision 4 of section 186 of the Banking Law, as it existed in 1913, now section 185, does not refer to a trusteeship under a mortgage given by an individual. Consequently, subdivision 11 of section 186 of the Banking Law, already quoted, does not prohibit a foreign corporation from acting as trustee under a mortgage in this State, when it is given by an individual, as was done in the case at bar. Appellants, however, contend that the plaintiff trust company is prohibited by subdivision 8 of section 186 of the Banking Law, above set forth. Subdivision 11 of section 186 provides that a foreign

corporation shall not exercise any of the powers specified in subdivision 8, namely: " To take, accept and execute any and all such trusts and powers of whatever nature or description as may be conferred upon or intrusted or committed to it by any person or persons, or any body politic, corporation or other authority, by grant, assignment, transfer, devise, bequest or otherwise, or which may be intrusted or committed or transferred to it or vested in it by order of any court of record," etc. These things a foreign corporation is forbidden to do. Now, may it not be held that the Legislature intended to cover the subject of a foreign corporation acting as trustee under a mortgage by subdivision 4 of section 186 of the Banking Law, already referred to? This subdivision does not prohibit a foreign corporation from acting as trustee under a mortgage given in this State by an individual. It will be noticed that subdivision 8, while quite specific, does not refer at all to a trust under a mortgage. It refers to trusts by virtue of grants, assignments, transfers, devises and bequests. A mortgage is none of these. No title, of course, passes under a mortgage. It is not a grant. Subdivision 8 does use the words " or otherwise," but it seems to me that it may be reasonably held, in view of the provisions of subdivision 4 as to trusteeship under a mortgage, that subdivision 8 was intended to apply to other trusts and not to apply to a trusteeship under a mortgage which was covered by subdivision 4. If this be so, the plaintiff was not prohibited from acting under the mortgage in question because it was given by an individual and not prohibited by subdivision 4 of section 186 of the Banking Law, now section 185.

This, I think, is the construction which should be given to the statutes in question, and, if correct, it follows that the plaintiff violated no law of the State of New York in acting as trustee under the mortgage in question.

There are some other points raised by the appellants. I have examined them all, and think only one requires notice. It is claimed by the appellants that the mortgage in question was not made to secure the whole issue of bonds, but only to secure certain subscribers to the bonds, who should pay their subscriptions prior to the formation of the business corporation which was in process of formation, namely, the defendant, National Automatic Press Company. An examination of Exhibit C, the trust agreement, convinces me that there is no merit in this point. This agreement recites that a charter is about to be issued to the National Automatic Press Company, and that, when it is formed, it will take title to certain property in the State of Pennsylvania for the purpose of manufacturing printing presses, and that this property, together

with other property, is to be subjected to the lien of a certain trust mortgage for $100;000, given by said corporation to secure an issue of bonds of like amount, and then it is stated that said bonds are to be further secured by the execution and delivery by Arthur B. Jennings of certain real estate located in the county of Queens. Later on, in this agreement, it is recited that the Chelten Trust Company holds this property in trust for the following purposes: " To secure unto any and all subscribers to the said bonds of the National Automatic Press Company who may pay their said subscriptions to it, the said Chelten Trust Company, prior to the formation of the said Company and the issue of its said bonds, re-payment of the subscriptions so paid; should the said bonds not be issued on or before the First day of January, 1914, and upon the issue of the said bonds then to continue to hold the said real estate upon the following uses and trusts, namely,—" Here follow provisions relative to the sale of the lots, etc. And then appears the following: " and upon the further trust to hold for the securing of the payment of the said bonds all said lots as shall not be sold as aforesaid, and the purchase moneys received from all of such lots as shall be sold as aforesaid, until payment shall have been made of all of the said bonds to the holders and owners thereof at or before maturity of said bonds."

There is also a further provision as to distribution of the proceeds received from the sale of said property, as follows: " to divide so much of all purchase moneys received from any of the aforesaid sales to and among the said several holders of the said bonds as may be necessary to fully pay and satisfy the said bonds, together with interest thereon, and should there be any balance of purchase money, or any portion of the said property remaining after the payment of the said bonds, together with interest thereon, then to pay over and convey the same unto the said Arthur B. Jennings at his own proper costs and charges."

From these provisions, it is clear to me that it was intended by appellants and clearly expressed in the agreement that the Queens county real estate was given for the protection of all the bondholders and was not limited as appellants contend.

The judgment should be affirmed, with costs. Conclusions of law I and VI should be stricken out.

Present — KELLY, P. J., RICH, YOUNG, KAPPER and LAZANSKY, JJ.

Judgment unanimously affirmed, with costs. Conclusions of law I and VI stricken out.