CAMP-OF-THE-PINES, INC., Plaintiff, *v.* NEW YORK TIMES COMPANY, Defendant.

Supreme Court, Special Term, Albany County, February 28, 1945.

*Edgar M. Souza* for defendant.

*Milton B. Knox* for plaintiff.

MURRAY, J.   This action is for breach of an alleged contract predicated on refusal by defendant to print and publish advertisements that plaintiff operates a vacation camp for the benefit of " selected clientele ".   The parties are domestic corporations. Defendant's motion is for summary judgment pursuant to rules 113 and 114 of the Rules of Civil Practice.   Plaintiff, by cross motion, seeks an order to strike from defendant's amended answer four paragraphs, to wit, " 19 ", " 20 ", " 21 " and " 22 ", on the ground that the matters pleaded therein are frivolous, irrelevant, unnecessary and impertinent.

Defendant publishes the *New York Times,* a daily newspaper of wide and extensive circulation.   It is used as an advertising medium by hotels, summer resorts, camps and clubs situate in the Adirondack Mountain district in New York State. Plaintiff conducts a summer camp for vacationists on Lake Champlain, near Willsboro, N. Y.   It publicly solicits paying customers.   The facilities of the camp, plaintiff states, are only for the use of members in good standing in a so-called Camp-of-the-Pines Vacation Club to join which written application must be made to a membership committee, and in addition, the application must furnish satisfactory references and pay annual dues.

Prior to July 1, 1943, Edgar S. Knox owned and operated the camp.   Plaintiff by purchase or transfer has succeeded to all of Mr. Knox's rights in the property.   Five separate causes of action are alleged in the complaint.   In substance, they are: That defendant solicited advertising from Mr. Knox, plaintiff's predecessor, in the spring of 1943, for the summer season of 1943.   That Mr. Knox offered to defendant June 9, 1943, for publication by defendant on Sunday, June 13, 1943, an advertisement in the following words and language:

CAMP-OF-THE-PINES

on N. Y. Shore — Lake Champlain

20 acres — pine woods — sunny fields.   Exceptional private sand beach. Plain, simple accommodations, modern appointments.   Main dining room.   Program of things to do — or to leave undone!   Without change from New York City by train or bus.   July 1 through Labor Day. Selected clientele.   Write for Booklet T.   67 Columbia St., Albany 6, N. Y.

Defendant edited the advertising copy sent by plaintiff by striking out the words " selected clientele " and in place substituted the words " congenial following ". The advertisement, as so edited, was printed and published by defendant June 13, 1943, and thereafter at different intervals throughout the season of 1943.

It is charged by plaintiff that omission of the words " selected clientele " and insertion of " congenial following " was without the consent of Edgar S. Knox or plaintiff. It is claimed by plaintiff that defendant accepted the advertising copy precisely as written and agreed specifically to insert and print it as submitted without change for ten consecutive Sundays in 1943 and also in its weekday paper.

Plaintiff alleges that in 1942 Mr. Knox submitted to defendant a number of advertisements of similar character as that forwarded in 1943 which contained the words " carefully selected clientele " which defendant printed and published without objection.

The first cause of action is for money damages of " considerable extent " by reason of refusal of defendant to print and publish in June, 1943, and for ten consecutive Sundays thereafter in 1943 the advertisement exactly as sent it by plaintiff.

The second cause of action is for injunctive relief. It is asserted that defendant will continue to refuse to publish plaintiff's proposed advertisements in 1944 and thereafter containing the words " selected clientele " unless plaintiff will consent to the omission of such words and phrases. Judgment is demanded that defendant be permanently restrained from refusing to accept and print the advertisements of plaintiff containing the words " selected clientele ".

In the third cause of action plaintiff contends defendant caused it to suffer money damages " in a substantial sum ", because defendant changed the advertising copy by deleting therefrom the words " selected clientele " without its consent and inserted words of its choosing. That it printed advertisements not as submitted by plaintiff.

The fourth cause of action charges that defendant deliberately and willfully omitted to print and insert any advertisement of plaintiff in its newspaper for Sunday, July 25, 1943, in violation of its agreement that it would insert plaintiff's advertising material and copy for ten consecutive Sundays, beginning with the issue of Sunday, June 13, 1943. That defendant would not publish any advertisement of plaintiff in any of its Sunday editions after July 25, 1943, unless plaintiff would consent to

accept words of defendant's choosing. That under protest plaintiff so agreed, and by reason of such wrongful conduct on the part of defendant, it suffered " considerable damage ".

The fifth cause alleges unlawful discrimination by defendant against plaintiff in that defendant neglected and refused to insert in plaintiff's advertisement certain words and phrases, although it did publish for other persons advertisements of the same type and classification in which the same words and phrases or words and phrases of similar meaning submitted by plaintiff and its predecessor were used.

Each and every material allegation of the complaint is denied by defendant. The answer avers that in every instance where words in the advertising copy were changed by defendant that such change and the use of any substituted words was with the consent and knowledge of plaintiff or its agent Knox. The amended answer sets forth a separate defense to each alleged cause of action, substantially as follows:

In February, 1943, defendant and other publishers of newspapers in the county of New York were notified by the District Attorney of New York County of the provisions of section 40 of the Civil Rights Law of the State of New York. His letter stated that the printing and publishing of advertisements wherein the words " Restricted Clientele ", " Restricted ", " Selected Clientele " and the like was generally understood and intended to mean that guests of Jewish faith or colored persons were not wanted or accommodated at such hotels or resorts so advertising. He further stated it was his intention to prosecute the publisher of any newspaper who in the future violated the statute. He demanded that defendant and all other publishers promptly cease printing the words of discrimination mentioned by him in his letter.

Section 40 of the Civil Rights Law, germane to the issues herein, in part is as follows: " All persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any such place shall directly or indirectly refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or directly or indirectly publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect

that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of race, creed or color, or that the patronage or custom thereat, of any person belonging to or purporting to be of any particular race, creed or color is unwelcome, objectionable or not acceptable, desired or solicited. The production of any such written or printed communication, notice or advertisement, purporting to relate to any such place and to be made by any person being the owner, lessee, proprietor, superintendent or manager thereof, shall be presumptive evidence in any civil or criminal action that the same was authorized by such person."

Defendant thereafter informed Edgar S. Knox and plaintiff that it would refuse to publish advertisements which contained the words "Restricted Clientele", "Restricted", "Selected Clientele" or words of similar import.

The answer further alleges that plaintiff requested defendant to publish its advertisements without words indicating discrimination. That defendant, with the consent and approval of plaintiff as to the form thereof, during the months of July and August, 1943, published in its newspaper, the *New York Times*, all advertisements of plaintiff, and now and at all times is ready and willing to publish all advertisements offered it by plaintiff if conformable to law and defendant's regulations and which advertisements do not contain words indicating discrimination. Defendant further alleges in its answer that during the months of June, July and August, 1944, defendant published fifteen advertisements for plaintiff as follows:

June 11, 1944:

CAMP-OF-THE-PINES

On N. Y. Shore — Lake Champlain

20 acres — Pine Woods — sunny fields — exceptional private sand beach — plain, simple accommodations. Modern appointments. Main dining room. Program of things to do — or to leave undone. June 30th through Labor Day. Special rate July 4th week-end. Congenial following. Write for booklet T.

67 Columbia St., Albany 6, N. Y.

June 18, 25, 28, 1944:

CAMP-OF-THE-PINES

On N. Y. Shore — Lake Champlain

20 acres — Pine Woods — sunny fields — exceptional private sand beach — plain, simple accommodations. Modern appointments. Main dining room. Program of things to do — or to leave undone. June 30th through Labor Day. Special rate July 4th week-end. Near Protestant and Catholic churches. Write for Booklet T.

67 Columbia St., Albany 6, N. Y.

July 2, 3, 4, 7, 8, 9, 1944:

CAMP-OF-THE-PINES

On N. Y. Shore — Lake Champlain

20 acres — Pine Woods — sunny fields — exceptional private sand beach — plain, simple accommodations. Modern appointments. Main dining room. Program of things to do — or to leave undone. June 30th through Labor Day. Special rate before July 19th. Near Protestant and Catholic churches. Write for Booklet T.

67 Columbia St., Albany 6, N. Y.

July 16, 23, 30; August 6, 13, 1944:

CAMP-OF-THE-PINES

On N. Y. Shore — Lake Champlain

20 acres — Pine Woods — sunny fields — exceptional private sand beach — plain, simple accommodations. Modern appointments. Main dining room. Recreation hall. Near Protestant and Catholic churches. Write for Booklet T.

67 Columbia St., Albany 6, N. Y.

The purpose of rule 113 is to determine whether any bona fide triable issues exist to be tried. (*Ecker* v. *Muzysh*, 259 App. Div. 206.) Here allegations in the complaint do not constitute proof sufficient to defeat defendant's motion for summary judgment. (*Pribyl* v. *Van Loan & Co., Inc.*, 261 App. Div. 503.) Where an answer is served the complaint may be dismissed on motion upon the affidavit of a party setting forth such evidentiary facts as shall, if the motion is made on behalf of defendant, show that the action has no merit.

A mere naked offer or proposal submitted by one party to another does not constitute a contract. Only when a proposal or offer is accepted unconditionally and such acceptance in every respect meets and corresponds with the offer is a contract made. '' The mere expectation that a contract will be entered into and the fact that negotiations have been made to carry that expectation into effect do not constitute a contract.'' (1 Williston on Contracts [Rev. ed.], § 27, p. 59.)

Assuming the copy submitted by plaintiff or its officer or agent, Mr. Knox, to defendant contained no phrases or words objectionable or forbidden by section 40 of the Civil Rights Law, it is reasonably clear that the offer or proposal as made by plaintiff to defendant was never accepted. There is entire absence of any evidence by affidavit or otherwise that defendant agreed to print and publish the proposed advertisement exactly without change and as submitted by plaintiff. Acceptance must be positive and unequivocal. If an offer is modified it is equivalent to absolute rejection of the offer as made. (*Poel* v. *Brunswick-Balke-Collender Co.*, 216 N. Y. 310.) Defendant reserved,

and has in legal right by the very nature of its business, the privilege of approving on its part any and all advertising copy submitted by plaintiff or by any person to it for publication, providing it exercises good faith in so doing.

Defendant wrote a letter to Mr. Knox July 12, 1943, stating why it refused to publish the advertisement submitted by plaintiff to it wherein the words "selected clientele" were used by plaintiff, as follows: "Our explanation of the question of 'selected clientele' is this: Recently a New York State law relative to discrimination at places of public entertainment was invoked to avoid the use of such expressions as 'restricted', 'selected clientele', etc. We are, therefore, endeavoring to avoid any expressions which characterize the clientele of a hotel."

Considerable correspondence is in the record between the parties why defendant refused to accept and print verbatim the advertisements as submitted. Plaintiff wrote as follows on July 17, 1943: "Do we not have the right to advertise as we choose, providing we do not violate the law? Must we use wording as your department thinks is best for us? * * * we again ask you to insert our advertisement as we sent it to you with the words 'selected clientele' and shall expect that it will be done."

To which on July 21, 1943, defendant replied: "* * * We appreciate your feelings and would like to comply with your request to use the expression 'selected clientele'. * * * we are unable to do this. * * * it is better for the present for us to withhold your advertising until some agreeable copy may be arranged. * * * This situation was not brought about by any of the New York City standard newspapers, and we have only been trying to avoid any conflict under the instructions given by the District Attorney's office."

Plaintiff wrote defendant July 23, 1943: "* * * we are willing to advise you that ours is not a 'public' resort or hotel. We do not come under Section 40 of the Civil Rights Law and are not bound by the provisions thereof. We do restrict and we do select and we do both lawfully. We claim the absolute right to state such facts in our literature and advertisements."

Notwithstanding plaintiff's asserted right to have printed and published its advertisements containing the words "selected clientele" in this same letter, plaintiff wrote: "* * * However, if these words seem particularly offensive we will be willing for the balance of our insertions unless sooner changed by us, to have you use in place of the words 'selected clientele', the words 'Protestant-Catholic guests'. * * *

" Please insert our advertisement in your daily paper from July 26th., through 31st., as we sent it to you except that you may change ' selected clientele ' to ' Protestant-Catholic guests.' * * * "

Defendant on July 26, 1943, wrote plaintiff: " * * * Our Censorship Department * * * has ruled not to accept the use of any phrase which implies discrimination regardless of the type of advertisers. They recognize your right to operate on any plan of soliciting guests which seems best for you. But the *Times,* also, reserves its right to refuse any advertising copy which does not conform its regulations.

" This decision is not prompted by indifference towards your advertising in the *Times.*"

It is elementary for a contract to be valid that the agreement of the parties be definite, certain and explicit. Their full intention must be ascertained to a reasonable degree of certainty. The agreement must be neither vague nor indefinite. (*United Press* v. *New York Press Co.,* 164 N. Y. 406.) As long as there remains any of the material conditions of a contract to be settled and agreed upon, no binding agreement exists. (*Schenectady Stove Co.* v. *Holbrook et al.,* 101 N. Y. 45.)

The first cause of action must be dismissed as there is no evidence to substantiate, expressly or by implication, the claim of plaintiff that a definite agreement was ever made between plaintiff and defendant by which defendant agreed to insert plaintiff's advertisements in defendant's newspapers for ten consecutive weeks using as part of the advertisement the words " selected clientele ". For like reasons the fourth cause of action is dismissed.

The first advertisement was published Sunday, June 13, 1943. It was identical as requested by plaintiff except the words " selected clientele " were changed to " congenial following ". On the 17th of June, 1943, plaintiff directed defendant by telegram to insert thereafter in its newspaper the same advertisement as defendant had printed on June 13, 1943. In view of such order, there is no legal justification for the belated claim now made by plaintiff in the third cause of action that defendant altered the advertisement without its knowledge or consent. Plaintiff knew or should have known that the words " selected clientele " had not been printed. Accordingly, such alleged cause of action is dismissed.

Section 40 of the Civil Rights Law prohibits discrimination against any person by reason of race, color or religion. It is a remedial statute and must be liberally construed. It is designed

to the end that all persons shall be entitled to full and equal accommodations, advantages, facilities and privileges of any places of public accommodations, resorts or amusements subject only to the conditions and limitations established by law and applicable alike to all persons. Discrimination is barred either by direct or indirect means. (*Wollcott* v. *Shubert*, 217 N. Y. 212.) Any person who violates the provisions of section 40 or who shall aid or incite violation of any of the provisions of such section is guilty of a crime, and in addition, is liable to a penalty of not less than $100 nor more than $500 to be recovered by the person aggrieved. (Civil Rights Law, § 41.) A fair and reasonable interpretation of the facts compels the conclusion that the camp as conducted by plaintiff is a place of public accommodation and resort for recreation, rest and amusement.

Use of the words " selected clientele " in that the facilities of the camp are available only for the use of members in good standing in the Vacation Club is a mask and subterfuge. It is merely a cloak and disguise and an indirect means to hide discrimination. As a practical matter such words as " selected clientele " connote in the public mind that colored persons, Jews and others who are not lily-white need not apply to plaintiff for accommodation. That the alleged requirement of joining the Vacation Club is sham, insincere and mere pretense is clearly shown by a letter written to a prospective customer by Mr. Knox as follows:

" Willsboro, N. Y.
Aug. 2, 1942.

Mr. Reuben S. Lind,
  230 W. 97th Street,
    New York City, N. Y.
Dear Sir:

We are in receipt of your card of July 31st., and have today wired you as follows:
  ' Only purpose club is selection of guests. Absolutely
  no obligation.'

Under the law one operating a public place may not refuse accommodations because of race, color or creed. Believing that those on vacation have a better time if with people of their own kind, we have formulated the Camp-of-the-Pines Vacation Club, and accept as camp guests only members of this club. Most camps similar to ours are operated upon a similar basis. The Club operates for the only purpose of providing congenial vacations. It is separate from the Camp management, has no

obligations and never incurs any. The dues are used in their entirety to provide vacations for needy persons who would otherwise be deprived thereof, as explained in the larger folder.

If you will fill in the information called for on the club application blank you need not sign the same thereby eliminating any possible claim being made against you. We do not blame you for being careful after having had one unpleasant experience.

> Very truly yours,
> CAMP-OF-THE-PINES
> E. S. KNOX ''

A letter written to defendant on July 17, 1943, by Mr. Knox, president of plaintiff, clearly indicates the Vacation Club plan is but camouflage and that plaintiff attached but little importance to it. He wrote as follows:

'' We have your letters of July 12th., and 14th., relative to our advertisement. In your letter of July 14th., you say that starting July 18th., you have corrected our copy to read ' operated on Club plan ' which you feel would be better than ' club atmosphere ' mentioned in a previous letter. We have never received any letter mentioning ' club atmosphere '. * * *

'' What do you think the words ' operated on club plan ' will mean to those reading them? The phrase tells nothing except in effect ' do not answer this ad '. * * * ''

Tested by plain common sense in connection with the correspondence herein, the defendant, if it printed the words '' selected clientele '', would have, in my judgment, violated section 40 of the Civil Rights Law.

The alleged contract asserted by plaintiff is illegal and void. Not only is it injurious and offensive to morals, but it contravenes section 40 of the Civil Rights Law. No one may recover upon a contract which is unlawful. (*Samuel, Inc.*, v. *Hams*, 187 App. Div. 783.) Any contract prohibited by statute is void without being so expressly declared by the statute. (*Swing* v. *Dayton*, 124 App. Div. 58; *Chelten Trust Co.* v. *National Automatic Press Co.*, 216 App. Div. 380.) A contract is void against public policy when it tends to injustice or oppression, restraint of liberty and natural or legal rights. (*Anthony* v. *Syracuse University*, 224 App. Div. 487.)

Defendant was under no obligation to guess at its peril whether the words '' selected clientele '' did or did not violate the provisions of section 40 of the Civil Rights Law. The duty of courts is ever to be watchful and alert against open as well as covert and stealthy attacks and encroachments against the social as well as the political and economical rights of persons.

It is the duty of the court to sustain the obvious intent of the Legislature. The statute is definite, clear and unambiguous that there must be no discrimination, directly or indirectly, by reason of race, color or creed in excluding persons from places of public accommodation, resort or amusement. Our Constitution guarantees every citizen the right to life, liberty and the pursuit of happiness. It sternly prohibits religious intolerance. Section 40 of the Civil Rights Law is a laudable effort to blot out racial hatred. It strikes at the bigot and all promoters of discord and unhappiness. Every effort is made and should be made, and it is the duty of the courts to prevent, so far as is humanly possible, social and economic ostracism.

The questions of plaintiff to defendant: "What is all this about rights, etc? Where are our rights?" and the plaintiff's statement that it does restrict and does select its customers and has the absolute right to do so as a business venture without check by law is well answered in *Nebbia* v. *New York* (291 U. S. 502, 527-528) wherein the court states as follows: "The Constitution does not guarantee the unrestricted privilege to engage in a business or to conduct it as one pleases. Certain kinds of business may be prohibited; and the right to conduct a business, or to pursue a calling, may be conditioned. Regulation of a business to prevent waste of the state's resources may be justified. And, statutes prescribing the terms upon which those conducting certain businesses may contract, or imposing terms if they do enter into agreements, are within the state's competency."

In 1944, between the 11th of June and including August 13th, defendant, at the request of plaintiff, printed for it in defendant's newspapers fifteen separate advertisements. The second cause of action is for equitable relief. It is alleged therein that defendant will refuse to publish advertisements as worded by plaintiff and that thereby plaintiff will suffer irreparable damage. The facts reveal the contrary, in that plaintiff did have the use and benefit of the circulation of defendant's newspapers for advertising purposes. That defendant did publish and print for and on behalf of plaintiff for the year 1944 all its advertisements deleting therefrom the words "selected clientele". It was justified in doing so. In view of the provisions of section 40 of the Civil Rights Law and the facts, no cause for action is sustained, and accordingly, the second cause of action is dismissed.

Nothing has been submitted by plaintiff to sustain the allegations set forth in the fifth cause of action. It is dismissed. The

record is bare of any evidence that defendant has discriminated against plaintiff in any particular. The complaint of plaintiff is that it has the right legally and morally to compel defendant to print and publish its advertisements without any editing on the part of defendant.

I am unable to agree with this conclusion. Research does not provide any decision expressly on the precise question, but as to the rights of a publisher of a newspaper to sell its product to whomever it pleases and to refrain from selling to those it deems undesirable, the law is definite and certain in such respect. " It is well-settled law of this State that the refusal to maintain trade relations with any individual is an inherent right which every person may exercise lawfully, for reasons he deems sufficient or for no reasons whatever, and it is immaterial whether such refusal is based upon reason or is the result of mere caprice, prejudice or malice. It is a part of the liberty of action which the Constitutions, State and Federal, guarantee to the citizen. It is not within the power of the courts to compel an owner of property to sell or part with his title to it, without his consent and against his wishes, to any particular person." (*Locker* v. *American Tobacco Co.,* 121 App. Div. 443, 451–452, affd. 195 N. Y. 565.)

If it be shown that a refusal to sell to any particular individual is the result of a conspiracy or in pursuance of a combination with others to injure the person with whom they refuse to deal, then such relief as equity provides may properly be invoked. There is no evidence here of any conspiracy or combination of individuals to injure plaintiff. Newspaper publishers have a legal right to deal with whom they please. There is no evidence that defendant committed any act in restraint of trade. There is no evidence that it did not act in entire good faith. It refused to publish an advertisement which was obnoxious and plainly a covert appeal to class prejudice.

Reflection causes me to wonder and observe who confers on any person the right to select those who select the " selected clientele ".

Consideration of the law and facts as presented in the absence of legislative regulation dictates that a publisher of a newspaper is not required to accept for publication an advertisement in proper form, where the rate which the newspaper charges for publishing is tendered to the newspaper. A newspaper in the absence of regulatory legislation is not in the same category as common carriers or innkeepers. The newspaper business, in the absence of statutes to the contrary, is a business essentially

private, just as much as that of the baker, the grocer or the milkman. While it is true that there are certain editors of newspapers who nominate themselves as chairmen of Weal and Woe, Inc., and undertake to regulate everybody's business, the great bulk of newspapers do their best to obey the law and keep within the proper fields of their business.

No cause of action is made out by plaintiff either expressly or by inference. The defenses interposed by defendant are proper, and the motion of plaintiff under rule 103 to strike out paragraphs '' 19 '', '' 20 '', '' 21 '' and '' 22 '' of the amended answer is denied.

The motion of defendant for summary judgment is granted, with costs.

Submit order.