HERMAN E. SCHORR, Respondent, *v.* BERNARR MACFADDEN FOUNDATION, INC., Appellant.

First Department, February 4, 1958.

152

*Harry Gilgulin* for appellant.

*George M. Golden* of counsel (*Golden, Lefkowitz & Rapport,* attorneys), for respondent.

BERGAN, J. Plaintiff is a physician; defendant Bernarr Macfadden Foundation, Inc. is a corporation which, among other things, maintains at Dansville, N. Y., a center " dedicated to the conservation of human health, body, mind and spirit." On September 27, 1954 plaintiff and defendant entered into a written contract prepared by defendant. Plaintiff was employed at a stated remuneration for two years. Defendant executed this contract by its president, Bernarr Macfadden.

What plaintiff undertook to do was specifically set forth in the instrument. He was to devote full time and his best ability " to the examination, diagnosis, care and outline of treatment of patients including all special treatments, dietetic advice ".

Besides these matters, which clearly involve the practice of medicine and thus are professional in nature, plaintiff agreed that he was to give " occasional lectures on health matters and

do all necessary for general welfare of Bernarr Macfadden Center." These additional undertakings, as thus described, do not involve the practice of medicine; and in giving lectures or doing things "necessary for general welfare" of the foundation, plaintiff's contract was performable entirely beyond the scope of the relationship of a physician to his patient.

That portion of the contract calling for plaintiff to devote full time to patients seems valid on its face. It does not authorize the defendant corporation to practice medicine under the aegis of plaintiff's license; nor does it provide that the fees which plaintiff might be entitled to receive from patients would be payable to the defendant; that plaintiff would not receive any fees from patients in view of the compensation payable under the contract; or that the physician would regard the general compensation as a satisfaction of payment of all fees for professional services.

We read it on its face as a contract requiring plaintiff to be available at a particular place; to devote his full time to the practice of medicine there and to perform other services to the corporation not in themselves constituting the practice of medicine. We see no prima facie invalidity of a contract by which a physician undertakes to practice medicine at a particular place and to perform certain additional nonmedical services. We assume a commercial hotel, a railroad, a steamship company, a department store or other similar enterprise, could validly enter into such an undertaking with a physician and not find itself in conflict with statute or public policy. (Cf. Education Law, §§ 6501, 6502.)

If in the way the parties intended to perform the contract it was envisioned that it would be in conflict with statute, the burden was upon the defendant to plead and prove such an intention. (Civ. Prac. Act, § 242.)

Plaintiff was discharged by defendant in February, 1955, about five months after the two-year contract had been in effect and this action is for the breach of contractual obligation for the tendered but unaccepted performance for the balance of the term. The complaint was verified and defendant's verified answer asserted certain affirmative defenses based, among other things, on purported breaches of contract by plaintiff.

But defendant did not plead in its verified answer that the contract which it had prepared and which plaintiff signed was "illegal"; or that it was the intention of the parties that defendant should practice medicine through plaintiff or receive fees for plaintiff's professional services; or that it became

" illegal " because of the way it was actually performed by both parties during all or any part of the five months' period it was operative.

At the end of the case defendant, without swearing any witnesses, rested and moved to amend its answer " to have the word ' illegality ' " pleaded and to " add " to the answer " illegality of contract ". This amendment was allowed by the court.

Such an unverified attack on the legality of the contract which defendant itself had prepared and partially performed ought not to have been allowed at that stage of the action without showing a persuasive reason for failure to assert it at the usual time by proper pleading. But if an amendment were to be allowed, exact factual averments of an intention by both parties to permit the defendant to practice medicine or receive fees for the plaintiff's practice of medicine ought to have been required. The loose, indefinite, indecisive phrase " illegality of contract " is alone meaningless as a factual pleading unless seen in some exactly stated factual context.

The theory of amendment was that it was to conform to the proof. But the proof did not disclose that the parties had intended that the contract, seemingly good on its face, was actually designed to permit defendant to practice medicine or to receive plaintiff's fees from patients in plaintiff's practice. Neither oral agreement supplementing the written words, nor other proof at the inception of the contract was offered.

Defendant argued that it is to be inferred from one part of plaintiff's testimony on cross-examination that his professional fees for services were paid by patients to the defendant. But the testimony on this subject is equivocal; at one point plaintiff said in response to a question by the court as to the charge for his services that " At one time it went to the hotel. Then it was changed  *  *  *  and it was paid to me ".

If we accord to defendant every favorable inference from this proof it would not sustain a finding that at the time of its inception the contract was invalid or that at some indefinite point of time in the course of its performance, " At one time ", in the words of plaintiff, it became so unlawful in the manner of performance by both parties as to invalidate the entire agreement. The proof in respect of payment of plaintiff's fees indicates that as time went on plaintiff received his own fees. It could not be inferred from this that the original or later intent of the parties was so marked by illegality that the future performance of the contract would be invalid for violation of public policy.

Therefore, even though the theory of illegality of contract had been pleaded in time, had been verified, and was in proper form, the proof in support of it relied on by defendant is inadequate to invalidate the contract as a whole or to establish that its continued future performance would have been characterized by practices which would have invalidated it. Such a result would have depended on a clear showing of intention which is absent from this record.

The general purposes of the defendant's business as they appear in the record before us, such as the maintenance of a center for the "conservation of human health" is not itself the practice of medicine. In *Samuel, Inc.,* v. *Hams* (187 App. Div. 783) plaintiff, a corporation engaged in maintaining an institution for rest, physical exercise and "hygienic treatment" was denied recovery on a contract with a person agreeing to pay for the services rendered at the institution. Although a minority of the court was of opinion that the services agreed to be performed amounted to the practice of medicine, the majority held it was not such practice, but agreed to deny recovery because of the conceded physical inability of the defendant to undergo the treatment offered by plaintiff and for which the action in contract was maintained.

The usual way in which invalidity of contract under the statute requiring the license of a physician and prohibiting practice of medicine without such a license would arise is by action of enforcement of contract for medical services by the unlicensed person or an unauthorized corporation. The general rule is that the right to such a recovery is dependent on the right to practice. (70 C. J. S., Physicians and Surgeons, § 69, p. 1026.)

The legislative prohibition may be so sweeping in character that no recovery is possible in the absence of license. The statute regulating sales of intoxicating beverages, for example, was regarded as having such an effect in *Carmine* v. *Murphy* (285 N. Y. 413) and the complaint for recovery of the agreed price for the sale of liquor was dismissed, plaintiff conceding he had no license.

But there are areas covered by licensing and regulation in which the right of action in contract is not so sharply cut off and depends on the nature of the contract and the purpose of the regulation and of the license. A good example of this is *Rosasco Creameries* v. *Cohen* (276 N. Y. 274) where the affirmative defense that plaintiff was not licensed as a milk dealer was stricken from the answer of the defendants, also milk dealers, in an action to recover for milk sold. Where the defense is

asserted that the contract violates a statute *malum prohibitum* the general rule that illegal contracts are unenforcible " does not always apply." (P. 278.)

The court will examine the justness of the cause as well as the effect and purpose of the statute. In the *Rosasco* case the fact was considered that the defendants asserting that the plaintiff was an unlicensed dealer were themselves dealers. On the general question of the right to sue as affected by licensing statutes or their equivalents, see, also, *Sajor* v. *Ampol, Inc.* (275 N. Y. 125) and *Fosdick* v. *Investors Syndicate* (266 N. Y. 130). (Cf. *Jewish Mental Health Soc.* v. *Village of Hastings-on-Hudson*, 255 App. Div. 77.)

Moreover, nothing whatever has been shown to indicate that the performance of services beyond the area of professional work was unlawful, or to segregate its value in any way. The result reached by the court that plaintiff should recover is justified by the record.

The judgment should be affirmed on the law and on the facts, with costs.

RABIN, J. P., FRANK, VALENTE and McNALLY, JJ., concur.

Judgment unanimously affirmed, with costs to the respondent.